[Dkt. No. 60]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

PAULINE BARTON,

    Plaintiff,

       v.

MID-ATLANTIC FLOORING VENTURES
INC. d/b/a PROSOURCE OF SOUTH
JERSEY AND PROSOURCE OF RARITAN
CENTER, et al.,

    Defendants.

Civil No. 13-4592
(RMB/AMD)

**OPINION**

Appearances:

Robert J. Hagerty, Esquire
Hagerty & Bland-Tull Law LLC
714 East Main Street, Suite 2C
Moorestown, New Jersey 08057

    Attorney for Plaintiff

Ian D. Meklinsky, Esquire
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311

    Attorney for Defendants

**Bumb**, United States District Judge:

    On August 28, 2015, Defendant Mid-Atlantic Flooring

Ventures Inc., ("Mid-Atlantic"), Aaron Bailey, and Mark Grossman

(the "Defendants") filed a Motion to Enforce Settlement or, In the Alternative for Reconsideration of this Court's August 18, 2015 Opinion and Order [Dkt. No. 60].  In the motion, Defendants contended that, prior to this Court's August 18, 2015, Opinion and Order, the parties had settled their differences, specifically (1) the parties had agreed to a settlement in the total amount of $6,200, and (2) Plaintiff Pauline Barton ("Plaintiff") would execute a general release of all claims against Defendants, that is, she would not bring any further unrelated claims she may have against Defendants.  Plaintiff disagreed on both points.  Thereafter, the parties resolved the disputed issue dealing with attorney's fees.  The only remaining dispute is whether they settled the Plaintiff's bar to further litigation against Defendants [see Dkt. No. 90].

## I.   **Factual Background**

The factual background is as follows.  Before this Court ruled on Defendants' then pending attorney's fees motion on August 18, 2015, the Court had referred the matter to a settlement conference before United States Magistrate Judge Ann Donio.  The parties appeared for a settlement conference on February 18, 2015.  Defendants contend that the parties agreed to a settlement in the total amount of $6,200.00 to be memorialized in a written settlement agreement.  A multitude of

2

email exchanges followed.  In relevant part, Plaintiff objected

to the provision contained in the draft agreement provided by

Defendants regarding the scope of the release to be executed by

Plaintiff and, in turn, provided her own draft.  In one e-mail,

counsel for Plaintiff, Robert J. Hagerty, Esquire, wrote to

counsel for Defendants, Ian Meklinsky, Esquire:

> Now, I am presented with a General Release which was
> not bargained for, including numerous provisions which
> were not even discussed at the conference with Judge
> Donio.  I don't know why you prepared a document well
> beyond the scope of the conference with the Court, but
> I am troubled by it.  [Defendants] waived any
> opportunity it might have had to receive a General
> Release when it admitted liability by making an Offer
> of Judgment instead of negotiating a settlement.  Your
> client can not bootstrap its lost opportunity into
> this narrow dispute.
>
> Attached is a proposed draft of the Settlement
> Agreement which is consistent with the discussion with
> Judge Donio.

<u>cite.</u> Ex. D [Dkt. No. 60-3].

In Plaintiff's draft of the agreement, Plaintiff received

$1,000.00 out of the $6,200.00 payment.  Defendants responded by

acquiescing to some of the changes, but made clear that there

must be a general release as to future claims by Plaintiff

against Defendants.

Plaintiff wrote to Magistrate Judge Donio outlining the

dispute.  Magistrate Judge Donio called the parties in for a

second conference on May 5, 2015.  At the second conference,

Plaintiff explained that she could not agree to the general release because she believed that she had an additional claim against Defendants for tortious interference, a claim not alleged in the within matter.  (Plaintiff averred that her subsequent employer terminated her because of information of an alleged non-compete clause communicated by Defendants to that employer.)  Because the parties could not agree on the scope of the release, which is a material term, no settlement was reached at the conference.

Following the May 5, 2015, conference, counsel for Defendants, Mr. Meklinsky, investigated Plaintiff's alleged claim of tortious interference.  Specifically, Plaintiff contended that she was terminated from her job because Defendants falsely told that employer that Plaintiff had a non-compete clause in her contract with Defendant Mid-Atlantic that prevented her from that employment.  On June 1, 2015, Mr. Meklinsky sent an affidavit to Mr. Hagerty from Plaintiff's subsequent employer who stated that Plaintiff's termination from employment had nothing to do with Defendants' conduct.  Ex H [Dkt. No. 60-3].

On June 22, 2015, Mr. Hagerty responded by stating that he had been unable to speak with Plaintiff's subsequent employer: "These facts, joined to her [the subsequent employer]

4

willingness to be dishonest, leave [Plaintiff] no choice but to
accede to the full release suggested by Judge Donio, on the
terms suggested by Judge Donio . . . a proposed draft will
follow." Ex. I [Dkt. No. 60-3]. No draft followed.

Three minutes later, the settlement discussions quickly
deteriorated, to put it mildly, as demonstrated by the following
e-mail exchanges:

On Monday, June 22, Mr. Meklinsky wrote:

Thanks for the commentary and editorial. You have our
last version of our redline that shows the changes that
are acceptable to us. If that version is acceptable I
will have a clean execution copy prepared. Let me know
if that is acceptable as we will NOT start with a new
version of an agreement. Let me know.

cite. Ex J [Dkt. No. 60-3].

On Wednesday, June 24, Mr. Hagerty wrote:

You're welcome.

So there is no confusion, kindly forward your last
version of your redline to ensure I am looking at the
document satisfactory to you. To be clear, you have
rejected my proposal of preparing an agreement
consistent with Judge Donio's suggestions, and we have
not accepted your last redline version.

Thank you.

cite. Ex J [Dkt. No. 60-3].

On June 24, Mr. Meklinsky wrote:

Rob -

You are anything but clear and your condescending
tone and attitude is only encouraging us to withdraw
our *proposal* to wrap this up and leave you and your
client with a patently frivolous claim and the right
to appeal what will surely be the denial of your
application. I am out of town and will send you the
agreement which is, in our view, in conformance with
the deal we cut with you with Judge Donio that you
subsequently rejected by trying to change the terms
of the deal. It's a take it or leave it proposition.

Please note that in the event the court rules against
you on your application we still reserve the right -
as we did when I sent you the original email about
the frivolous nature of the claim you wanted to
preserve - to withdraw this offer of settlement.

Ian

cite. [Dkt. No. 60-3]. (emphasis added)

On June 24, Mr. Hagerty wrote:

I apologize for your perception of a condescending
tone and attitude on my part. I strive not to engage
in that unless my adversary does so first.

I'm not sure where I am "anything but clear." To
further clarify my request that you forward the
document which is acceptable to your client--there
were several iterations of this settlement agreement,
and I certainly don't want to waste my time and yours
reviewing the incorrect document.

On June 24, Mr. Meklinsky wrote:

cite. Ex J [Dkt. No. 60-3].

Rob —

I have attached a PDF of the revised redline. I took
the redline I previously provided to you and made a
few edits. The "new" edits are highlighted in
yellow· Some of the "new" edits are to fix typos,
some are to address the fact that your client is

6

over 40 and as such, I need to deal with that for
the general release and, finally, you wanted us to
make the $1,000 payment to your client directly so I
fixed that.  I am circulating this on my side at
the same time I am sending to you so it is subject
to some approval on my side.  Let me know if it this
works and I can accept all the changes and circulate
a clean execution copy.  If my side catches any
errors, I will let you know.

Ian

cite. Ex K [Dkt. No. 60-4].

On June 26, Mr. Meklinsky wrote:

Kindly do the following:

1. Execute the agreement on behalf of your firm;
2. Have Ms. Barton execute the agreement on her
behalf;
3. Send me completed W-9s for your firm and Ms.
Barton;
4. Send me an executed copy of the Warrant to
Satisfy the judgment (I sent it to you a while ago;
if you do not have it, let me know and I will
resend);
5. Send me the documents back in accordance with
the Confidentiality Order.

Ms. Barton has 21 calendar days to consider this
agreement and then seven days to revoke.  No
payments will be made until we receive 1-5 above
provided Ms. Barton signs and does not revoke her
acceptance of the agreement.

It appears, inexplicably, that Mr. Hagerty did not respond

until July 18, 2015.

Ms. Barton has assigned the attorney fee claim to
my firm.  Presumably, we are going to end up
putting this back in Judge Bumb's hands so she
can decide whether or not to grant my original
request for an extension of time to submit the
fee petition.

7

cite Ex. N [Dkt. No. 60-4].

What next followed was a letter by Mr. Meklinsky to Judge
Donio.  In relevant part, counsel acknowledged that the matter
had been "referred back to this Court because of the parties'
inability to reach a settlement at the conferences" before Judge
Donio.  cite Ex. P [Dkt. No. 60-4].  In his letter, Mr.
Meklinsky expressed concern that Mr. Hagerty had "never intended
to settle in good faith."  The letter to Judge Donio provided,
in full:

> Dear Judge Donio:
>
> We understand that this matter has been referred back
> to Judge Bumb for her decision due to the parties'
> inability to reach a settlement at the conferences
> with Your Honor. However, I write to advise you of a
> new development that could potentially warrant
> further intervention, but at the very least, should
> be brought to Your Honor's attention.
>
> As Your Honor may remember, after the first settlement
> conference the parties reached an agreement on a
> settlement amount. Following that conference, we
> forwarded a draft agreement with a general release
> that was rejected by Mr. Hagerty as being beyond the
> scope of what was agreed to. As a result, Your Honor
> scheduled a second settlement conference, wherein Mr.
> Hagerty advised that they would not agree to a
> general release because Ms. Barton wanted to pursue
> single specific claim with respect to Mid-Atlantic's
> alleged interference with her employment at Regency
> Flooring.  At the time, that singular issue derailed
> the settlement.
>
> Following that second settlement conference, I
> investigated the claims raised by Mr. Hagerty. In
> doing so, I spoke with the President of Regency

Flooring as well as its counsel and obtained an affidavit that irrefutably showed that Mr. Hagerty's threatened claims were without merit.  With the sole outstanding issue now resolved , I sent Mr. Hagerty a revised settlement agreement for execution.

After three weeks without word, over the weekend Mr. Hagerty sent an email advising that they are not settling the matter because Ms. Barton has "assigned" the claim for attorneys' fees to his firm. We are concerned that Mr. Hagerty never intended to settle the claim in good faith, despite forcing us, and Your Honor, to attend multiple settlement conferences. If the only issue preventing settlement was resolved, what basis could possibly exist for Mr. Hagerty to continue to pursue the claim except that he never intended to settle in the first place?  It appears that this is a ploy aimed at avoiding any release from Ms. Barton despite our prior discussions. We are considering filing a motion to enforce the settlement because we believe the resolution of that one outstanding issue resulted in a settlement of all material terms. On the other hand, we may simply await Judge Bumb's decision on the merits because, as we have stated all along, we feel very strongly about our position.

We believe that given the circumstances and the history of this matter, Your Honor should be aware of these developments . We would be happy to participate in a conference call to discuss these issues further as we decide what, if any, action we will take.

Respectfully submitted,

Ian D. Meklinsky IDM:ja
cc:  Robert J. Hagerty, Esq. (via email only)

<u>cite</u> Ex. P [Dkt. No. 60-4].

## II.  **Analysis**

The construction and enforcement of settlement agreements
is governed by principles of New Jersey contract law. Plymouth
Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of
Chicago, 378 F.2d 389, 391 (3d Cir. 1967); Pacific Alliance Grp.
Ltd. v. Pure Energy Corp., 2006 WL 166470, at *2 (D.N.J. Jan.
23, 2006).  Under New Jersey law a settlement agreement between
parties to a lawsuit is a contract separate and independent from
the underlying dispute. Plymouth Alliance Grp., at *2 (citation
omitted). "The burden is on the moving party [in this case
Defendant] to establish that the parties entered into a contract
of settlement." LNT Merch. Co. v. Dyson, Inc., C.A. No. 08-2883
(SRC), 2009 WL 2169236, at *2 (D.N.J. July 21, 2009) (citing
Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997));
United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997).

New Jersey public policy favors settlements of litigation.
(citing Longo v. First Nat. Mortgage Sources, 523 F. App'x 875,
878, (3d Cir. 2013); Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472
(1990).  However, notwithstanding the policy favoring
settlements, "courts will not enforce a settlement 'where there
appears to have been an absence of mutuality of accord between
the parties or their attorneys in some substantial particulars,
or the stipulated agreement is incomplete in some of its

10

material and essential terms.'"  Id.  (quoting Bistricer v.

Bistricer, 231 N.J. Super. 143, 147 (Ch. Div. 1987)).

In order to have an enforceable settlement or contract

there "must be a 'meeting of the minds' for each material term

to an agreement." Pacific Alliance Grp. 2006 WL 166470, at *3

(citing Sampson v. Pierson, 140 N.J. Eq. 524 (N.J. Ch. 1947)).

"A meeting of the minds occurs when there has been a common

understanding and mutual assent of all the terms of a contract."

Knight v. New England Mut. Life Ins. Co., 220 N.J. Super. 560,

565 (App. Div. 1987) (citing,  omitted).  Where the parties do

not agree to one Meier v. New Jersey Life Ins. Co., 101 N.J.

597, 619 (1986).  Where the parties do not agree to one or more

essential terms, courts, courts generally hold that an agreement

is unenforceable.  Baer v. Chase, 392 F.3d 609, 619 (3d Cir.

2004)(citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435

(1992)).

Objective manifestations of intent are controlling when

determining if there was a meeting of the minds. See Brawer v.

Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000) ("A

contracting party is bound by the apparent intention he or she

outwardly manifests to the other party. It is immaterial that he

or she has a different, secret intention from that outwardly

manifested."); Leitner v. Braen, 51 N.J. Super. 31, 38 (App.

Div. 1958) ("The phrase, 'meeting of the minds,' can properly
mean only the agreement reached by the parties as expressed,
i.e., their manifested intention, not one secret or undisclosed,
which may be wholly at variance with the former."). "Where there
is a misunderstanding between the parties pertaining to one of
the material terms of an agreement, there is no meeting of the
minds, and therefore no contract." Pacific Alliance Grp., 2006
WL 166470, at * 3; see also D.R. by M.R. v. East Brunswick Bd.
of Educ., 838 F. Supp. 184, 191-92 (D.N.J. 1993) ("[A] contract
cannot be made when there has been no common understanding and
mutual assent to the terms of a contract."); Big M, Inc. v.
Dryden Advisory Grp., C.A. No. 08-3567 (KSH), 2009 WL 1905106,
at * 22 (D.N.J. Jun. 30, 2009) (finding no meeting of the minds
where the parties did not attach the same meaning to a contract
term).

        The Court rules that Defendants' motion should be denied
because the parties did not reach a meeting of the minds as to a
material settlement term, the general release.  The record shows
that a common understanding and mutual assent to the general
release was lacking.  Both parties rely heavily on Mr. Hagerty's
June 22, 2015, e-mail response, but each came to different
conclusions. Defendants construe the e-mail as Plaintiff's
acceptance of a full general release. Plaintiff, however, states

                                    12

that she was willing to agree to the "full release suggested by
Judge Donio."  As set forth in Mr. Hagerty's prior e-mail of
March 12, 2015, it was Plaintiff's position that a general
release was <u>not</u> discussed at the conference before Judge Donio.
Certainly, Mr. Hagerty could have been more forthright in his
response.  Yet, it is clear to any observer that the acrimony
between the parties had trumped any hope of that.

Moreover, Mr. Hagerty clarified – or reiterated, according
to him – his position two days later that Plaintiff had "not
accepted [Defendants'] last redline version," which contained
the general release.  <u>See</u> June 24, 2015, e-mail.

Furthermore, the e-mail exchanges indicate that each side
was posturing.  For example, Mr. Meklinsky's June 24 e-mail
referred to a possible withdrawal of a proposal.  And, as noted,
Mr. Hagerty's response was less than clear.

In the Court's final analysis, it is regrettable that the
parties did not reach a meeting of the minds.  Indeed, this case
is regrettable for reasons this Court has articulated over the
years, and yet, it seems there is no end in sight to the abject
animosity between the parties and their counsel.  Despite
Defendants' production of a sworn statement by Plaintiff's prior
employer that Defendants' conduct played no part in the decision
to fire Plaintiff, Plaintiff nevertheless filed her lawsuit

13

apparently naming one or more of the Defendants in state court.[1]
This Court empathizes with the state court judge who will likely
be overburdened with scorched-earth litigation.

        For all of the foregoing reasons, the Motion to Enforce
Settlement is denied, insofar as it did not contain an agreed-
upon general release.

                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge
Dated: August 1, 2016

---

[1] The Court finds Mr. Hagerty's R:4:5-1 Certification to the
Superior Court of New Jersey troubling.  Clearly, had this Court
ruled that Plaintiff had released her claim, the state court
action would have been barred.